**LOMA LINDA UNIVERSITY, a California non-profit corporation, Plaintiff-Appellant,**

v.

**Richard S. SCHWEIKER, Secretary of the Department of Health and Human Services; Earl M. Collier, Jr., Deputy Administrator, Health Care Financing Administrator, Defendants-Appellees.**

No. 82–5213.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 6, 1983.

Decided May 9, 1983.

---

J. Robert Liset, Musick, Peeler & Garrett, Los Angeles, Cal., for plaintiff-appellant.

Carolyn Reynolds, Asst. U.S. Atty., Los Angeles, Cal., Jeanne Schulte Scott, Washington, D.C., for defendants-appellees.

Before SKOPIL, NELSON and CANBY, Circuit Judges.

SKOPIL, Circuit Judge:

Loma Linda University appeals the district court's summary judgment for the Secretary of Health and Human Services. The district court found that substantial evidence supported the Deputy Administrator's determination that Loma Linda University Hospital's intensive care areas did not qualify as "special care inpatient units" under 42 C.F.R. § 405.452(d)(10) (1972). The issues on appeal are whether: (1) the Deputy Administrator's decision is supported by substantial evidence; (2) the Deputy Administrator's decision was based upon a review of the record as a whole; and (3) the Deputy Administrator has authority under the applicable regulations to undertake own motion review of the Provider Reimbursement Review Board's (PRRB) decision. We affirm.

## FACTS AND PROCEEDINGS BELOW

Loma Linda University operates a hospital and teaching facility equipped to provide all levels of medical and nursing care. During the years at issue, 1974 through 1977, the hospital used an experimental dependency methodology billing system. Under this system all of the rooms in the hospital could be adapted to function as intensive care units by adding the necessary equipment and staff. The attending physician's instructions determined the level of care provided. The nurses working on each shift recorded the amount of "dependency care" each patient received and the patient was billed accordingly.

The hospital claimed costs related to greater dependency care as special care unit costs under 42 C.F.R. § 405.452(d)(10) (1972) when it filed its annual medicare cost reports for medicare reimbursements. The Fiscal Intermediary concluded that the hospital had not separately identified and accounted for these special care units, as required by the regulation. The Intermediary recalculated these costs using the average or routine per diem formula. Loma Linda contended the recalculation resulted in a reduction of one million dollars in its medicare reimbursement and appealed the Intermediary's decision to the PRRB.

The PRRB found that the special care units were physically identifiable and that adequate records had been kept justifying the increased reimbursements Loma Linda claimed. Upon his own motion, the Deputy Administrator reviewed the PRRB decision and reversed the portion concerning the special care units. The Administrator concluded that the PRRB had improperly interpreted 42 C.F.R. § 405.452(d)(10) (1972), which required the hospital to separately identify the special care units. He further concluded that the hospital's dependency methodology billing system did not comply with the regulations concerning cost identification.

Loma Linda filed a complaint in district court. The district court remanded the case

to the Deputy Administrator for reconsideration because he reviewed a record from which one hundred exhibits were missing. The Deputy Administrator reviewed the entire record and confirmed his original decision. After a hearing the district court affirmed the Deputy Administrator's decision denying special care unit reimbursements to the hospital for the years 1974 through 1977.

### SUBSTANTIAL EVIDENCE

The Medicare Act allows a provider of medical services, such as Loma Linda University, to recover the reasonable cost of services provided to those patients eligible for medicare benefits. 42 U.S.C. §§ 1395 *et seq.* Section 1395x(v)(1)(A) states that reasonable costs are to be determined in accordance with the appropriate regulations. The regulations provide for a higher rate of reimbursement for intensive care than for routine care. During the relevant time, 42 C.F.R. § 405.452(d)(10) (1972) required that intensive care units be "physically identifiable as separate from general patient care areas." The Deputy Administrator determined that because Loma Linda's special care units were not physically separate from the routine care areas, the hospital could receive reimbursement only at the lower rate for routine care areas. The Administrator also determined that the hospital had not adequately identified the costs attributable to the special care units.

■ When reviewing the Deputy Administrator's decision, this court gives due deference to the agency's interpretation of a statute or regulation. *Batterton v. Francis,* 432 U.S. 416, 424–25, 97 S.Ct. 2399, 2404–05, 53 L.Ed.2d 448 (1977); *White Memorial Medical Center v. Schweiker,* 640 F.2d 1126, 1129 (9th Cir.1981); *Psychiatric Institute of Washington, D.C., Inc. v. Schweiker,* 669 F.2d 812, 813–14 (D.C.Cir. 1981) (per curiam). The agency's construction must be reviewed in relation to the governing statutes, however, and the regulations must be consistent with and in furtherance of the purposes and policies embodied in the congressional statutes that

authorize them. *Pacific Coast Medical Enterprises v. Harris,* 633 F.2d 123, 131–32 (9th Cir.1980). An agency's interpretation must be affirmed if it is within the range of reasonable meanings the words permit. *Psychiatric Institute of Washington, D.C., Inc.,* 669 F.2d at 813–14.

■ Here the Deputy Administrator's interpretation of the regulation is reasonable. He concluded that the term "physically identifiable as separate" in the 1972 regulation, meant actual physical separateness of the intensive care areas from the routine patient care areas and that the special cost identification procedures must be followed in order for the provider to receive reimbursements at the higher rate. Uniform accounting procedures make the cost identification and reimbursement process for this complex program more efficient. Physical separateness is a reasonable means of identifying the special care units and apportioning the costs to them. The manner in which the two classes of care were differentiated for the provision of reimbursement was initially the Secretary's decision and application of the system continues to be within the Secretary's discretion.

■ Substantial evidence supported the Secretary's decision that Loma Linda's intensive care areas did not qualify as special care units under the regulations and that the dependency methodology billing system did not satisfy the cost identification requirements. Although each room at Loma Linda could be converted to an intensive care facility, the rooms were not physically separate as the Secretary had interpreted that requirement. The dependency methodology billing system did not comply with the uniform accounting methods necessary to the cost identification process.

■ Loma Linda argues that the Secretary's requirement of physical separateness was new and that it was not in effect during the years 1974 through 1977. This argument is without merit. The regulation as initially promulgated and in effect during the relevant years stated that the intensive care units "must be physically identifi-

able as separate from general patient care." 237 Fed.Reg. 10355 (May 20, 1972). The language in the present regulation states that the "unit must be physically and identifiably separate from the general routine patient care areas...." 42 C.F.R. § 405.-452(d)(10)(ii) (1982). The language in both regulations is virtually identical. The new regulation simply makes more explicit the physical separateness requirement. Furthermore, the hospital was notified in 1972 that its experimental program might not comply with cost accounting requirements for receiving reimbursements for intensive care areas.

Loma Linda University hospital's experimental program was an innovative, commendable attempt to reduce rising medical costs. The proper avenue, however, for receiving reimbursement for the special care provided under this experimental program was to apply for an exception. *See* 42 U.S.C. § 1395b–1(b). The hospital was notified in 1972 of the problem with its experimental accounting method. Although it began to apply for an exception, it did not receive the approval of the Government before the program ended.

### REVIEW OF THE WHOLE RECORD

Loma Linda argues that because certain exhibits were not included in the record upon which the Deputy Administrator based his March 8, 1980 decision, the decision was arbitrary and capricious, and therefore without effect. *See United States v. Heffner,* 420 F.2d 809, 811 (4th Cir.1969). If so, the decision of the PRRB was not properly reviewed within 60 days and is final under 42 U.S.C. § 1395oo (f)(1).

■■■ This argument is without merit. The March 8, 1980 decision was not set aside by the district court. The district court remanded to the Deputy Administrator for reconsideration in light of the missing documents. A reviewing court has inherent power to remand a matter to the administrative agency. *Secretary of Labor v. Farino,* 490 F.2d 885, 891 (7th Cir.1973). Where the agency has failed to consider important evidence, the proper course is to

remand for reconsideration rather than undertake its own inquiry into the merits, *Asarco, Inc. v. United States Environmental Protection Agency,* 616 F.2d 1153, 1160 (9th Cir.1980). The review after remand corrected deficiencies in the earlier review which was conducted within the statutory period. After remand, the Deputy Administrator issued a decision confirming his March 8, 1980 decision. Under these circumstances, the review was timely for the purpose of the statute and was a review of the whole record.

### OWN MOTION REVIEW

■■■ Loma Linda contends that the Deputy Administrator of the Health Care Financing Administration (HCFA) lacked authority to perform "own motion" review of the decision of PRRB. Loma Linda argues that because such review violated the agency's own regulations, the Deputy Administrator's decision of March 8, 1980 is without effect and must be struck down. *Heffner,* 420 F.2d at 811. The PRRB's decision of January 3, 1980 would therefore be final under 42 U.S.C. § 1395oo (f)(1) because it was not properly reviewed within 60 days. We disagree.

The Secretary is authorized under 42 U.S.C. § 1395oo (f)(1) to review a decision of the PRRB on his own motion. On March 9, 1977 the Secretary delegated the power to perform that review to the Administrator of the HCFA, with authority to redelegate. 42 Fed.Reg. 13262 (March 9, 1977). Loma Linda, however, points to the Administrator's interim procedures governing "own motion" review providing that "decision making authority in 'own motion' review cases is reserved exclusively to the Administrator." 42 Fed.Reg. 44599 at 44600 (September 6, 1977). Loma Linda interprets this to mean that the Deputy Administrator cannot exercise own motion review authority.

The Administrator intended the above-quoted language to prevent unauthorized agency review, not to foreclose delegation to the Deputy Administrator at a later date. The Secretary's delegation to the Ad-

ministrator specifically permitted redelegation, and the Administrator's interim procedures referred to that delegation. In addition, the Secretary later clarified the matter by providing that the Administrator could redelegate authority to perform "own motion" review only to the Deputy Administrator of the HCFA. 42 Fed.Reg. 57351 at 57353 (October 28, 1977). The Administrator exercised this authority to redelegate to the Deputy Administrator on September 5, 1979.

Express statutory authority for delegation is not required, *Tabor v. Joint Board for Enrollment of Actuaries*, 566 F.2d 705, 708 n. 5 (D.C.Cir.1977), and Congress did not specifically prohibit delegation under this statute. Furthermore, this court has held that, under the previous organizational structure for medicare reimbursement, delegation of the Secretary's "own motion" review function was proper. *Pacific Coast Medical Enterprises*, 633 F.2d at 128 n. 11. *See also Indiana Hospital Association, Inc. v. Schweiker*, 544 F.Supp. 1167, 1177–78 (S.D.Ind.1982).

## CONCLUSION

Substantial evidence supported the Secretary's decision that Loma Linda's intensive care areas did not qualify as special care units under the regulations and that the dependency methodology billing system did not satisfy the cost identification requirements. The Deputy Administrator's review was timely and was a review of the whole record. The Deputy Administrator properly performed own motion review since such authority was redelegated by the Administrator of HCFA.

The judgment is AFFIRMED.