Sarah KUNAKNANA and Jean Numnik, Plaintiffs/Appellants,

v.

William CLARK, Secretary of the Interior, and the United States Department of the Interior, Defendants/Appellees,

and

Amoco Production Company; Arco Alaska, Inc.; Getty Oil Company; Shell Oil Company; and Texaco, Inc., Intervenor-Defendants/Appellants.

Nos. 83–4325, 84–3623.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 16, 1984.

Decided Sept. 10, 1984.

Opinion Filed Sept. 12, 1984.

1146

Donald Cooper, James Bamberger, Alaska Legal Services Corp., Anchorage, Alaska, for plaintiffs-appellants.

G. Thomas Koester, Sarah E. McCracken, Asst. Attys. Gen., Anchorage, Alaska, for amicus curiae State of Alaska.

Sanford Sagalkin, Anchorage, Alaska, for amicus curiae North Slope Borough.

Fred R. Disheroon, Washington, D.C., for defendants-appellees.

Carl J.D. Bauman, Hughes, Thorsness, Gantz, Powell & Brundin, Anchorage, Alaska, for intervenor.

Before ANDERSON, SKOPIL and POOLE, Circuit Judges.

**J. BLAINE ANDERSON, Circuit Judge:**

Sarah Kunaknana and Jean Numnik, two Inupiat Eskimos, appeal a district court judgment denying their challenge to certain oil and gas lease sales by the Bureau of Land Management within the Alaska National Petroleum Reserve. We affirm.

## I. OVERVIEW

This appeal concerns oil and gas leasing on the National Petroleum Reserve-Alaska (NPR–A), a national petroleum reserve located on the North Slope in Alaska and encompassing 23 million acres. With certain exceptions, oil and gas production was prohibited within this reserve according to the terms of the Naval Petroleum Reserves Production Act of 1976 (NPRPA). 42 U.S.C. §§ 6501–6507. In 1980, Congress amended the NPRPA to provide for "an expeditious program of competitive leasing" in the NPR–A. *Id.* at § 6508.

Pursuant to this directive, an expedited leasing program was developed. The program involved five annual sales of approximately two million acres each. The Bureau of Land Management (BLM) published a Final Environmental Impact Statement (FEIS) concerning oil and gas leasing in the NPR–A and subsequently issued its Record of Decision. Lease Sale 831, challenged here, was the first offering under this scheme.

Appellants Numnik and Kunaknana and the State of Alaska and the North Slope Borough, amici here, sought a preliminary injunction blocking the lease sale. They noted that one of the primary objectives of the Alaska National Interest Lands Conservation Act (ANILCA), enacted just weeks before the NPRPA was amended, was "to provide the opportunity for rural residents engaged in a subsistence way of life [the opportunity] to do so." 16 U.S.C. § 3101(c). They contended that the BLM had failed to make certain determinations required by the ANILCA after concluding the lease sale would result in a significant restriction of subsistence use by the native Alaskans. 16 U.S.C. § 3120.

A preliminary injunction issued on July 19, 1983, after the district court concluded that the BLM had failed to make the required findings. The court permitted opening and accepting of bids by the BLM but enjoined execution of leases pending an expedited trial on the merits. Such a trial was required by the amended NPRPA. 42 U.S.C. § 6508. Of the 81 tracts offered for lease in Sale 831, bids on 17 were accepted.

Trial on the merits commenced December 12, 1983, and the full administrative record was submitted to the court without objection. Counsel for the government announced that its position had changed since the preliminary injunction hearing. He asserted that a mistake had induced the government's initial position due to an assumption that the BLM had made a determination of significant restriction in subsistence use. Admittedly, such a conclusion would require further findings under 16 U.S.C. § 3120(a). At trial, counsel asserted that the BLM had, in fact, concluded just the opposite and offered a "Modified Record of Decision" to explain this determination.

The district court entered its decision, finding in favor of the government on the merits. The court enjoined execution of the leases, allowing appellants to file in this court for injunction pending appeal. An injunction pending appeal was entered on January 13, 1984, permitting lease issuance but enjoining any exploratory drilling or any other lease activity that would substantially and adversely affect subsistence use. This expedited appeal followed.

## II. DISCUSSION

Appellants Kunaknana and Numnik contest the validity of the district court's review. They argue that the court considered impermissible materials, improperly limited discovery and erred in determining that the BLM's rulemaking procedure complied with section 810 of the ANILCA. Intervenors Amoco Production Company, et al., cross-appeal, contending that Kunaknana and Numnik lack standing due to a failure to participate meaningfully in the administrative process preceding Lease Sale 831.

### A. *Standing*

■ Traditionally, a party has standing to seek judicial review of agency action where the challenged action has caused "injury in fact" to an interest "arguably within the zone of interests to be protected or regulated by the statute" allegedly vio-

lated. *State of California v. Block*, 690 F.2d 753, 776 (9th Cir.1982) (quoting *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970)). Under this requirement, plaintiffs must show not only a "distinct and palpable" injury but also a "fairly traceable" causal connection between the claimed injury and the challenged conduct. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975).

■ We find that the traditional standing requirements have been met by appellants. The purpose of the ANILCA was to protect those North Slope natives who, like appellants, lead a subsistence lifestyle. 16 U.S.C. §§ 3111–3112. Oil and gas development within the area would directly affect the availability of the subsistence resources and limit those areas in which subsistence activities could be conducted.

■ We disagree with intervenor's claim that appellants should be deprived of standing due to a failure to participate meaningfully in the administrative process. *See Vermont Yankee Power Corporation v. National Resources Defense Council*, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978). *See also City and County of San Francisco v. United States*, 615 F.2d 498 (9th Cir.1980) and *Seacoast Anti-Pollution League v. Nuclear Regulatory Commission*, 598 F.2d 1221 (1st Cir.1979). The rationale of *Vermont Yankee* has been applied in those instances in which an interested party suggests that certain factors be included in the agency analysis but later refuses the agency's request for assistance in exploring that party's contentions. *Id.* 435 U.S. at 553–554, 98 S.Ct. at 1216–1217. Such a party will not be permitted to challenge the agency decision on the ground that it failed to consider the necessary alternatives. *Id.* The district court declined to establish a broad rule which would require participation in agency proceedings as a condition precedent to seeking judicial review of an agency decision, and we affirm.

## B. *The Modified Record of Decision*

Appellants take issue with the district court's inclusion of the Modified Record of Decision (MROD) as a part of the administrative record on review. Characterizing the MROD as an impermissible *post hoc* rationalization of an agency decision, made in response to litigation, appellants contend that consideration of the MROD was improper. *See Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 420, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971); *accord Camp v. Pitts,* 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (per curiam). We disagree.

■ Agency actions are reviewed by examining the administrative record at the time the agency made its decision. *Overton Park,* 401 U.S. at 419–420, 91 S.Ct. at 825. Agency documents prepared during and in response to litigation are generally excluded from this review. *Id.; accord ASARCO, Inc. v. U.S. Environmental Protection Agency,* 616 F.2d 1153, 1158–61 (9th Cir.1980).

The general rule prohibiting *post hoc* rationalizations is not without exceptions. In *Overton Park,* the Supreme Court expressly authorized the trial court to allow the Secretary of Transportation to "prepare formal findings" in order to "provide an adequate explanation for his action" which the court could then review. 401 U.S. at 420, 91 S.Ct. at 826. The Ninth Circuit has also addressed the scope of the district court's review of an agency decision, adopting the more "enlightened" approach which permits "explanation" of agency decision-making. *ASARCO,* 616 F.2d at 1159. In *ASARCO,* we held that "[a] satisfactory explanation of agency action is essential for adequate judicial review, because the focus of judicial review is . . . on whether the process employed by the agency to reach its decision took into consideration all the relevant factors." *Id.; accord Overton Park,* 401 U.S. at 410, 91 S.Ct. at 820; *Bunker Hill Co. v. Environmental Protection Agency,* 572 F.2d 1286, 1289 (9th Cir.1977). The court limited the purposes for which information outside the administrative record may be considered to use as "background information" and for "ascertaining whether the agency considered all the relevant factors or fully explicated its course of conduct or grounds of decision." *ASARCO,* 616 F.2d at 1160. Finally, the court observed that additional information should be explanatory in nature, rather than a new rationalization of the agency's decision, and must be sustained by the record. *Id.* at 1159–60.

■ In the instant matter, the district court noted that "without the [MROD], the record before this court will 'not disclose the factors that the Director considered or [his] construction of the evidence.'" CR 111 (*citing Overton Park, id.* 401 U.S. at 419–20, 91 S.Ct. at 825). It appears that without benefit of the explanation of agency action set forth in the MROD, the trial court would be prevented from determining whether the agency action was within the scope of its authority. We find, therefore, that the inclusion of the MROD in the district court's review was both permissible and necessary.

## C. *Section 810 Compliance*

The appellants argue that the Department of Interior failed to comply with Section 810 of the Alaska National Interest Lands Conservation Act of 1980 in holding Lease Sale 831. 16 U.S.C. § 3120. They contend that the department failed to accurately identify the section's requirements and consequently failed to fulfill those requirements. We disagree.

The Department of the Interior and Related Agencies Appropriations Act, 1981, requires the Secretary of the Interior to implement "an expeditious program of competitive leasing of oil and gas in the National Petroleum Reserve in Alaska." 42 U.S.C. § 6508. The statute did not give the Secretary the discretion not to lease; instead, the Secretary was given the discretion to provide rules and regulations under which leasing *would* be conducted and was to develop restrictions necessary to mitigate adverse impact on the NPR–A. *Id.*

Expedited judicial review was an additional concern of this legislation. *Id.*

Shortly before the NPRPA legislation, Congress enacted the Alaska National Interest Lands Conservation Act. Its purpose was to preserve scenic Alaskan lands, to maintain wildlife species and undisturbed ecosystems and, as previously noted, to protect the interests of individuals engaged in subsistence lifestyles. 16 U.S.C. § 3101. In order to assure the continuation of subsistence lifestyles, Congress indicated that residents so engaged should play a part in the administrative structure. 16 U.S.C. § 3111. Section 810 of the ANILCA, 16 U.S.C. § 3120, provides the procedural mechanism which insures this local input into the administrative decision-making process.

Section 810, Public Law 96–487, 16 U.S.C. § 3120, provides in relevant part as follows:

(a) In determining whether to withdraw, reserve, lease, or otherwise permit the use, occupancy, or disposition of public lands under any provision of law authorizing such actions, the head of the Federal agency having primary jurisdiction over such lands or his designee shall evaluate the effect of such use, occupancy, or disposition on subsistence uses and needs, the availability of other lands for the purposes sought to be achieved, and other alternatives which would reduce or eliminate the use, occupancy, or disposition of public lands needed for subsistence purposes. No such withdrawal, reservation, lease, permit, or other use, occupancy or disposition of such lands which would significantly restrict subsistence uses shall be effected until the head of such Federal agency—

(1) gives notice to the appropriate State agency and the appropriate local committees and regional councils established pursuant to Section 805;

(2) gives notice of, and holds, a hearing in the vicinity of the area involved; and

(3) determines that (A) such a significant restriction of subsistence uses is necessary, consistent with sound management principles for the utilization of the public lands, (B) the proposed activity will involve the minimal amount of public lands necessary to accomplish the purposes of such use, occupancy, or other disposition, and (C) reasonable steps will be taken to minimize adverse impacts upon subsistence uses and resources resulting from such actions.

■ Agency interpretations of a statute are entitled to great deference and should be upheld so long as they are reasonable. *Western Pioneer, Inc. v. United States,* 709 F.2d 1331, 1335 (9th Cir.1983); *United States v. Boyden,* 696 F.2d 685, 688 (9th Cir.1983). "This traditional acquiescence in administrative expertise is particularly apt" when an agency "has played a pivotal role in 'setting [the statutory] machinery in motion.'" *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 566, 100 S.Ct. 790, 797, 63 L.Ed.2d 22 (1980) (*quoting Norwegian Nitrogen Products Co. v. United States,* 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796 (1933)). As we noted in *Western Pioneer,* 709 F.2d at 1335:

Our task then, is not to interpret the statutes as we think best, but rather to inquire whether the [agency's] construction was "sufficiently reasonable" to be accepted. "To satisfy the standard it is not necessary for a court to find that the agency's construction was the only reasonable one or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." [citations omitted.]

The plain terms of Section 810(a) require the director or his designee, here the BLM (agency), to "evaluate" three factors concerning the decision to issue oil and gas leases involved in the programmatic leasing sale. These factors include: (1) the effect of leases on subsistence uses and needs; (2) the availability of other lands for oil and gas leasing; and (3) other alternatives which would reduce or eliminate the

amount of land taken away from subsistence uses. 16 U.S.C. § 3120(a). This provision must be read in light of section 6508 which requires the agency to grant some oil and gas leases in the NPR–A. 42 U.S.C. § 6508. The only "other lands" and "other alternatives" that the agency could have considered without violating section 6508 would be other tracts within the NPR–A which could be leased for oil and gas.

As the district court observed, when the first sentence of section 810(a) is read in light of 42 U.S.C. § 6508, it requires the agency to evaluate the effects upon subsistence needs of leasing the particular tracts tentatively selected and to compare the relative desirability of leasing other tracts within the NPR–A. This leaves to the agency's discretion the particular details concerning when, where, and how leasing within the NPR–A shall occur.

■ A second provision of Section 810(a) requires the agency to hold public hearings and make specific findings concerning significant restrictions upon subsistence uses caused by federal decisions involving Alaskan public lands. 16 U.S.C. § 3120(a). The second sentence of this provision suggests that these procedures are necessary only if the agency first concludes that the contemplated action may significantly restrict subsistence uses. *Id.* To read the sentence otherwise would require that the agency follow these procedures any time it contemplated federal action concerning any public lands in Alaska and would completely ignore the phrase "which would significantly restrict subsistence uses." The inference to be drawn from this language is that Congress intended a two-step process: first, the agency determines whether the contemplated action may significantly restrict subsistence use; if it may, the agency must comply with the notice and hearing procedures. This construction of the statute is a reasonable one, relying on the plain meaning of the words of the statute.

Pursuant to this procedural scheme, the agency first defined "significant restriction" and then conducted an extended analysis of the "significance" of subsistence restrictions, as to both subsistence resources and user access. MROD at 1, 5–25. This analysis allowed a finding of no significance only if there were "no" reductions or only "slight" reductions or disruption of resources or user access to those resources. MROD at 5–6. As a result of its analysis, the agency determined that neither the programmatic leasing program nor Lease Sale 831 would significantly restrict subsistence uses. Appellants argue that this decision was capricious and should be overruled. 5 U.S.C. § 706(2)(A).

> To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Citizens to Preserve Overton Park v. Volpe,* 401 U.S. at 416–17, 91 S.Ct. at 823–24; *Southeast Alaska Conservation Council v. Watson,* 697 F.2d 1305, 1312 (9th Cir.1983). Additionally, we must consider whether the agency articulated a rational connection between the facts found and the choice made. *State of California v. Watt,* 683 F.2d 1253 (9th Cir.1982).

■ We find that the agency examined the relevant factors and did not err in its judgment. The district court's decision includes findings of fact which evidence an articulated rational connection between the facts found [by the agency] and the choice made. *Id. See* CR 111 (Decision of Record). The agency's decision-making process included the cumulative impacts of both the entire expedited leasing program and Lease Sale 831. This is evidenced by the fact that the agency removed certain lands, such as Caribou calving areas and Black Brant molting areas, from potential leasing and included stipulations regarding subsistence use in the leases. The agency imposed these protective lease conditions and stipulations in order to preclude *future* restrictions on subsistence uses that might be caused by activity permitted by the NPR–A leasing program.

Appellants argue that the agency adopted an overly restrictive definition of the term "significant restriction upon subsistence uses." This term is not defined by Section 810(a); consequently, the agency has defined it as (1) a reduction in the availability of harvestable resources caused by decline in the population of subsistence resources; (2) a reduction in the availability of resources, caused by an alteration in their distribution or location throughout the NPR–A; and (3) the limitation of access for subsistence harvesters. Arguing that the term is analogous to the finding of "significant effect on the quality of the human environment" of the NEPA provisions, appellants urge adoption of a broader definition. They argue that a "restriction" is a much higher threshold than that required to trigger a NEPA procedural process and so should be prohibited.

■ We agree with the district court's finding that the agency definition of "significant restriction" is within the range of reasonable meanings which the words of the statute permit. *Loma Linda University v. Schweiker,* 705 F.2d 1123, 1126 (9th Cir.1983). The term "restrict" may well be a higher threshold than that required by NEPA; however, we need not determine in this case whether the agency's general definition survives the arbitrary and capricious standard in all cases or whether it is not at a high enough threshold. We hold only on the record before us that the application of that definition to the proceedings here and the actual analysis that led to the decision reached was not arbitrary and capricious and that the proceedings undertaken sufficiently complied with the requirements of section 810. We note also that the BLM explicitly retained the right to impose additional restrictions, including mitigation requirements during the permitting process to protect subsistence resources. The definition is within the range of meanings which could be given and is consistent with the purposes of the legislation and we affirm. *Id.*

## D. *Restriction of Appellants' Case*

Kunaknana and Numnik contend that the district court erred by unreasonably restricting the presentation of their case. Specifically, error is alleged in the district court's refusal to consider the affidavits of two of appellants' expert witnesses; limitation of discovery; and improper resolution of the MROD issue on summary judgment.

■ As noted earlier, trial court review of agency decision-making is generally limited to the existing administrative record. *Overton Park, id.* This record may be supplemented with testimony from the officials who participated in the decision explaining their action or by formal findings prepared by the agency explaining its decision. *ASARCO,* 616 F.2d at 1159–60. Outside information is admissible only for limited purposes. *Id.* at 1160–61. *See Bunker Hill,* 572 F.2d at 1292 (outside evidence admitted to furnish background information); *see also Association of Pacific Fisheries v. Environmental Protection Agency,* 615 F.2d 794, 811 (9th Cir.1980) (outside evidence used to ascertain whether all relevant factors were considered). "[T]echnical testimony ... elicited for the purpose of determining the scientific merit of the [agency's] decision," is not generally admissible. *ASARCO, id.* at 1161.

■ Our review leads us to conclude that the expert witness affidavits offered by appellants, CR 68, are the type of "technical testimony" prepared "for the purpose of contesting the scientific merit" of the agency's analysis which we rejected in *ASARCO.* The district court's decision to exclude these documents on review is affirmed.

■ Appellants' contention that curtailment of discovery forced presentation of their case on an incomplete record lacks merit. The order staying discovery permitted deposition of BLM officials Jerry Wickstrom and James Gilliam and did not limit the areas of inquiry. CR 67. In view of the statutory mandate to expedite, 42 U.S.C. § 6508, we do not find that the district court abused its discretion in foreclosing discovery and setting an abbreviated briefing schedule. *O'Brien v. Sky Chefs, Inc.,* 670 F.2d 864, 869 (9th Cir. 1982).

Finally, Kunaknana and Numnik claim that the district court improperly resolved this matter on motion for summary judgment. We disagree. Our review reveals a trial by the court on December 12, 1983, followed by a resolution of the contested fact issues in a Decision of Record entered December 20, 1983. We find that the district court conducted the proper inquiry in the acceptable format.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM.