**PIERCE COUNTY, Petitioner,**

v.

**UNITED STATES, By and Through the DEPARTMENT OF LABOR, and Raymond Donovan, its Secretary of Labor, etc., Respondent.**

**Nos. 83–7504, 83–7505.**

United States Court of Appeals,
Ninth Circuit.

Argued March 4, 1985.

Submitted May 3, 1985.

Decided May 7, 1985.

---

Joseph Quinn, McCormick, Hoffman, Rees & Faubion, Tacoma, Wash., for petitioner.

William H. DuRoss, III, Washington, D.C., for respondent.

Before FARRIS, ALARCON, and FERGUSON, Circuit Judges.

ALARCON, Circuit Judge:

In this consolidated appeal, Pierce County seeks review of the adoption by the Secretary of Labor (hereinafter the Secretary) of the decision of the Administrative Law Judge (hereinafter the ALJ) to affirm in part two final determinations of the local grant officer requiring Pierce County's repayment of funds expended under the Comprehensive Employment and Training Act of 1973 (hereinafter CETA) as amended by Public Law 95–524, 92 Stat. 1909 (1978).[1]

 The issue before us is whether the Secretary's failure to make a final determination 120 days after receipt of an audit alleging violations by a CETA fund recipient deprives him of the authority to act on the allegation. We reverse because we conclude that the Secretary must make a final determination within 120 days of receiving an audit alleging violations of CETA. Since the Secretary lacked the authority to make a final determination after 120 days from the date of the filing of the audit, we do not reach the merits of Pierce County's contentions.

## II

### PROCEDURAL BACKGROUND

In Case No. 81–CETA–A–88, the Department of Labor Office of Special Investigations (OSI) filed an audit on September 19, 1978, concerning the rehiring of eight CETA public service officers under the Pierce County Public Service program with the Department of Labor grant officer who acts under the authority of the Secretary. The final determination was issued by the grant officer on February 13, 1981, approximately 29 months after the grant officer received the OSI audit.

A formal hearing was conducted on March 10, 1982. The ALJ determined that $108,636 should be disallowed as wages and fringe benefits paid to ineligible participants.

In Case No. 81–CETA–A–120 an audit, conducted by the Department of Labor Office of Inspector General (OIG) was received by the grant officer on December 11, 1978.

Nineteen months later, the grant officer made an initial determination. Pierce County then requested an extension to engage in an informal resolution of the matter. A corrected final determination was issued by the grant officer on May 22,

1. The Job Training Partnership Act 29 U.S.C. §§ 1501–1781, has replaced CETA. The Act provides that pending cases continue to be adjudicated pursuant to CETA as amended. 29 U.S.C. § 1591(e).

1981, approximately twenty-nine months after receipt of the audit. On April 5, 1983, the ALJ issued an order disallowing $264,947 and allowing $108,103 in costs. The Secretary adopted both decisions of the ALJ.

■ Pierce County argues that, under 29 U.S.C. § 816(b), the Secretary lacked the authority to order repayment of funds because that statute mandates issuance of a final determination within 120 days from the date the grant officer receives an audit.[2] We have recently resolved a similar dispute concerning the interpretation of section 816(b) in *City of Edmonds v. Department of Labor*, 749 F.2d 1419 (9th Cir.1984). In *City of Edmonds* we held that by enacting 29 U.S.C. § 816(b), Congress intended to preclude any action on an allegation when a final determination is not made within 120 days from receipt of a complaint from an interested citizen or organization. We reversed the decision of the Secretary requiring the City to repay CETA funds because the final determination was issued more than seven months after the period prescribed by the statute for the making of a final determination.

.It is undisputed in the instant matter that the Secretary failed to make a final determination in each case within 120 days of receiving the audit.

The only pertinent distinction between these matters and the procedural posture of *City of Edmonds* is that here the investigations were initiated by audits. In *City of Edmonds*, the investigation resulted from a complaint from an interested person. At oral argument, counsel for the Secretary argued that the 120 day time limitation was not applicable to an investigation triggered by an audit. We disagree.

### III

### DISCUSSION

Section 816(b) provides in pertinent part as follows:

Whenever the Secretary receives a complaint from an interested person or organization ... or whenever the Secretary has reason to believe (because of an audit, report, on-site review or otherwise) that a recipient of financial assistance under this Act is failing to comply with the requirements of this Act, or the terms of the comprehensive employment and training plan, the Secretary shall investigate the matter. The Secretary shall conduct such investigation and make the final determination ... not later than 120 days after receiving the complaint.

29 U.S.C. § 816(b). It is clear to us, from the plain meaning of the words used in the statute, that Congress intended to compel the Secretary to complete his investigations and make his final determination within 120 days after receiving a complaint from an interested person or organization, or an audit or report which gives him reason to believe that a recipient has received funds in violation of CETA. We are satisfied that in stating that a final determination must be made "not later than 120 days after receiving the complaint," Congress did not intend to limit the word "complaint" to a formal accusatory pleading.

■ The first sentence of section 816(b) makes it clear that Congress intended that the Secretary conduct an investigation upon receipt of a formal or informal report that a recipient of CETA funds has failed to comply with the statute. In *Lehigh Valley Manpower Program v. Donovan*, 718 F.2d 99 (3d Cir.1983), the court interpreted section 816(b) as requiring the Secretary to "issue a final determination with 120 days *after becoming aware of a possible violation.*" *Lehigh Valley Manpower Program v. Donovan*, 718 F.2d 99, 101 (3d Cir.1983) (emphasis added). We agree with the Third Circuit that the triggering event which starts the 120 investigation period is the awareness by the Secretary of an alleged violation by means of a citizen's com-

2. The construction of a statute is a question of law that is reviewed *de novo*. *United States v.*

*Louisiana-Pacific Corp.*, 754 F.2d 1445, 1447 (9th Cir.1985).

plaint, audit, report, on-site review "or otherwise."

Our interpretation of the word complaint is also supported by one of the denotations of the word "complaint" and the Secretary's own regulations. The definitions attributed to the word "complaint" include "something that is the cause or subject of protest or outcry" *Webster's New Collegiate Dictionary* 288 (8th ed. 1979). A Department of Labor audit critical of a CETA fund recipient is as much the "subject of protest" as a verbal report of wrong doing made by an interested citizen.

Further, we note that the Secretary promulgated a regulation to implement the authority conferred by Congress in the 1978 amendments to CETA on April 3, 1979, which supports this interpretation of the statute. *See* 20 C.F.R. § 676.88(e). That regulation, which became effective April 3, 1979, states in pertinent part:

> (e) *Final determination ... the Grant Officer shall not later than 120-days after the filing of a complaint (or receipt of a final audit or investigation report in the absence of a complaint),* provide each party with a final written notice ... that ... lists any sanctions, and required corrective actions ... The Grant Officer shall also mail a copy of his final determinations to any parties in interest.

20 C.F.R. § 676.88(e) (emphasis added).

 It is well settled that we are required to accord "great deference to the interpretation given the statute by the officers or agency charged with its administration." *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965); *Kunaknana v. Clark,* 742 F.2d 1145, 1150 (9th Cir.1984) (agency interpretations of a statute are entitled to great deference).

In addition, the Secretary issued a guidance manual in 1981 which provides that "The final determination must be issued by the Grant Officer 120 days from the day the final audit report is received." "Guide to Audit Resolution and Debt Collection for Prime Sponsors," *E.T. Handbook* No. 388

at 30, § C, (1981). This deadline was characterized as "not flexible." *Id.* § 2.

We are also mindful of the fact that in response to this court's request for supplemental briefing on the impact of the *City of Edmonds* decision on the power of the Secretary to act on these matters, counsel for the United States Department of Labor, stated:

> The Department did not ignore its responsibility to issue a final determination within 120 days of its receipt of an allegation of impropriety in the instant case.

We agree with this characterization of the word "complaint" as used by Congress in section 816(b).

## CONCLUSION

In both matters before this court, the Secretary failed to make a final determination within 120 days after receiving an audit containing allegations of impropriety. The delay requested by Pierce County in Case No. 81–CETA–A–120 did not occur until months after the 120 day period had expired. Because the Secretary had no authority to make a final determination due to the lapse of the mandatory time limit, the decision of the Secretary is REVERSED in each matter.