## LEHIGH VALLEY MANPOWER PROGRAM, Petitioner,

v.

### Raymond J. DONOVAN, Secretary of Labor, U.S. Department of Labor, Respondent.

#### No. 82–3184.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) March 1, 1983.

Decided Oct. 4, 1983.

Rehearing and Rehearing En Banc Denied Nov. 30, 1983.

Edward H. Feege, Hayes & Feege, P.C., Allentown, Pa., for petitioner.

Robert N. Sayler, John E. Heintz, Karen H. Rothenberg, Joan E. Donoghue, T. Timothy Ryan, Jr., Sol. of Labor, William H. DuRoss, III, Associate Sol. for Employment and Training, James P. Marion, Jr., Deputy Associate Sol. for Employment and Training Covington & Burling, Washington, D.C., for amici curiae Nat. Ass'n of Counties, Nat. League of Cities, U.S. Conference of Mayors, et al.

Harriet A. Gilliam, U.S. Dept. of Labor, Washington, D.C., for respondent.

Before SEITZ, Chief Judge, and WEIS and BECKER, Circuit Judges.

### OPINION OF THE COURT

WEIS, Circuit Judge.

On this appeal we conclude that the Secretary of Labor has authority to seek reimbursement for misapplication of CETA funds. However, since in this case he failed to observe time limits established by his own regulation for processing claims against municipal grantees, recovery is barred. Accordingly, the Secretary's order directing repayment will be set aside.

The Secretary of Labor asserted a claim against the Lehigh Valley Manpower Program for $27,662, the amount it paid as salary to its employee Robert Daday for the period March 1, 1978 to July 27, 1979. After a hearing, an ALJ found that by hiring

Daday Lehigh had violated the Secretary's regulations against nepotism and therefore directed repayment. Lehigh appeals the Secretary's final decision.

Section 301 of the Comprehensive Employment and Training Act, 29 U.S.C. § 871(a) (repealed in 1982), provided local municipalities with federal funds to stimulate employment. To implement the program, Congress authorized the Secretary of Labor to promulgate appropriate regulations. One regulation prohibited CETA prime sponsors from hiring an individual for a federally funded position if a member of his immediate family served in an administrative capacity with the same sponsor.

Lehigh Valley Manpower Program operated an employment and training plan as a CETA prime sponsor. In November 1978, the Secretary became aware that the hiring of Robert Daday might be a violation of the nepotism regulation and notified Lehigh. After an exchange of correspondence and meetings between officials of the two organizations, the acting regional administrator of the Department of Labor's Employment and Training Administration sent a letter dated March 13, 1979 to Lehigh advising that Daday's employment should be terminated immediately and the cost of his wage and fringe benefits refunded to the Secretary of Labor. Lehigh responded on April 6, 1979, calling attention to earlier negotiations between the parties and threatening to file suit if a prior commitment was not honored.

On August 28, 1979, the Department of Labor Grant Officer sent Lehigh a registered letter asking for reimbursement because the Secretary "had determined that there was a nepotism violation." It also advised that a request for hearing had to be submitted within ten days. Lehigh did take the necessary steps and, at the hearing on June 17, 1981, the ALJ stated that Lehigh sought reversal of the "final determination issued August 28, 1979 by the grant officer."

After taking testimony, the ALJ found the Secretary entitled to reimbursement. The ALJ rejected Lehigh's contention that recovery was barred because the Secretary had not complied with the regulation requiring final determination within 120 days. The ALJ concluded that the provision was "advisory," that the limitation first appeared in a regulation on April 3, 1979, five months after the nepotism violation, and that Lehigh had suffered no prejudice.

The ALJ's order became the final decision of the Secretary on March 12, 1982, and Lehigh appealed to this court, contending that the Labor Department did not properly interpret the nepotism regulation and is estopped because of oral commitments made by a department official. However, we find it necessary to address only Lehigh's arguments that the Secretary lacked authority to direct reimbursement under the 1973 statute, and that in any event, recovery is impermissible because the 120-day limitation was not observed.

Lehigh's position on reimbursement is that the 1973 Act did not require a prime sponsor to use non-CETA funds to repay amounts misspent in the administration of CETA activities. Conceding that such an assessment was permitted by the 1978 amendments, 29 U.S.C. § 816(d)(1), Lehigh argued that the changes were not retroactive. As support for its position, Lehigh relied on *New Jersey v. Hufstedler,* 662 F.2d 208 (3d Cir.1981). Because the Supreme Court had granted certiorari in that case, we held this appeal and another raising the same issue, *Atlantic County v. Secretary of Labor,* 715 F.2d 834 (3d Cir.1983), until disposition of the New Jersey case.

■ After the Supreme Court reversed *Hufstedler, Bell v. New Jersey,* —— U.S. ——, 103 S.Ct. 2187, 76 L.Ed.2d 313 (1983), we returned to our consideration of *Atlantic County v. Secretary of Labor.* We concluded that the Secretary of Labor had been given authority under the 1973 Act to recover misspent CETA funds from non-CETA sources. *Atlantic County v. Secretary of Labor,* 715 F.2d 834 (3d Cir.1983). That decision forecloses any further dispute about the Secretary's power to compel repayment, and we need not reconsider the matter.

The 120-day limitation period, however, was not an issue in *Atlantic County,* but having been raised by Lehigh in the administrative proceeding is properly before us.

During the floor debates on the 1978 amendments to CETA, Congressman Obey offered an amendment to the section that required the Secretary to investigate reported violations of the statute. 124 Cong. Rec. 25230–31 (1978). The proposed amendment was: "The Secretary shall conduct such investigation, and make a final determination required by the following sentence regarding the truth of the allegation or belief involved not later than 120 days after receiving the complaint." This amendment was accepted and incorporated in the statute immediately preceding this sentence: "If after such investigation, the Secretary determines that there is substantial evidence to support such allegation or belief that such a recipient is failing to comply with such requirements, the Secretary shall, after due notice and opportunity for a hearing to such recipient, determine whether such allegation or belief is true." [1]

Insertion of the Obey amendment into the statute results in a somewhat garbled provision. On close reading, however, the two sentences may be harmonized by construing them to require the Secretary to conduct a hearing and issue a final determination within 120 days after becoming aware of a possible violation. If that is a correct interpretation of the statute, then in this case the Secretary's final determination in March 1982 did not take place until more than three years after he became aware of the violation.

Either recognizing the stringency of the time limitation derived from the plain language of the statute, or perhaps believing that the wording was ambiguous, the Secretary drafted a regulation incorporating the 120-day period mentioned in the amendment. 20 C.F.R. § 676.88 (1982). *See also* 20 C.F.R. § 676.86(a)(1) (1982). The regulation provided that within 120 days after the filing of a complaint or an investigative report, the grant officer was to provide the party with a certified letter listing the matters in disagreement, sanctions, and notice of opportunity to have a hearing. The regulation thus excludes the post-hearing decision from the 120-day period. However, we need not decide whether the Secretary's interpretation of the statute was permissible because, even assuming the regulation was valid, it was not complied with here.

If the 120 days are measured from November 1978 when the Secretary first notified Lehigh about the violation, then the time had expired months before Lehigh was advised of its right to a hearing. Perhaps apprehensive that reliance on the statute might prove fatal to his claim, the Secretary, as made clear by the final determination letter of August 28, 1979, chose to proceed under the terms of the regulation. However, even under the most favorable interpretation to the Secretary, the time began to run on April 3, 1979, the date the ALJ fixed as the first time the limitation appeared in the regulations. That period expired on August 3, 1979. Thus, even accepting the Secretary's approach, the time had expired before the issuance of the final determination letter of August 28, 1979. Furthermore, since the Secretary proceeded under the regulation effective on April 3, 1979, no justification exists for

---

1. Section 106(b) reads in pertinent part:

"(b) Whenever the Secretary receives a complaint from any interested person or organization ... which alleges, or whenever the Secretary has reason to believe ... that a recipient of financial assistance under this Act is failing to comply with the requirements of this Act, the regulations under this Act, or the terms of the comprehensive employment and training plan, the Secretary shall investigate the matter. The Secretary shall conduct such investigation, and make the final determination required by the following sentence regarding the truth of the allegation or belief involved, not later than 120 days after receiving the complaint. If, after such investigation, the Secretary determines that there is substantial evidence to support such allegation or belief that such a recipient is failing to comply with such requirements, the Secretary shall, after due notice and opportunity for a hearing to such recipient, determine whether such allegation or belief is true." Comprehensive Employment and Training Act, § 106, 92 Stat. 1907, 1926 (1978).

treating any correspondence before that date as the final determination letter.

The ALJ's conclusion that the 120-day period was "advisory" is puzzling. The language of the regulation offers no support for that appraisal. Moreover, the statutory language shows that Congress was concerned with delay and wanted the Secretary to promptly resolve complaints. A regulation that failed to comply with that directive would lack validity. *See International Brotherhood of Teamsters v. Daniel,* 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808 (1978).

In *School District of Allentown v. Marshall,* 657 F.2d 16 (3d Cir.1981), we enforced an even shorter limitation period for filing an administrative complaint and rejected an agency attempt to overlook the deficiency. Whether Lehigh had suffered prejudice from the delay is not relevant. Agencies must observe not only time limits prescribed by Congress, but also their own procedural regulations. *See United States v. Nixon,* 418 U.S. 683, 695–96, 94 S.Ct. 3090, 3100–01, 41 L.Ed.2d 1039 (1974); *Neal v. Secretary of the Navy,* 639 F.2d 1029, 1035 (3d Cir.1981); *Kelly v. Railroad Retirement Board,* 625 F.2d 486, 491–92 (3d Cir. 1980). As the Supreme Court said in *Mohasco v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 2497, 65 L.Ed.2d 532 (1980), "Strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." This teaching of *Mohasco* loses none of its force when the agency itself imposes the procedural limitations.

■ Since the Secretary failed to follow the requirements specified by Congress or even his own regulation, it follows that the order may not be enforced. Accordingly, the petition for review will be granted, and the Secretary's order will be set aside.