**CITY OF EDMONDS, a Washington Municipal Corporation, Petitioner,**

**Seattle-King County Employment and Training Consortium, Intervenor/Petitioner,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Respondent.**

**CITY OF EDMONDS, a Washington Municipal Corporation, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Respondent,**

and

**Snohomish County, a Political Subdivision of the State of Washington, Cross-Petitioner.**

Nos. 84–7145, 84–7195.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 8, 1984.

Decided Dec. 27, 1984.

W. Scott Snyder, Ogden, Ogden & Murphy, Seattle, Wash., Wallace Murray, Dept. Pros. Atty., Snohmish Co., Evertt, Wash., Robert H. Alsdorf, Armstrong & Alsdorf, Seattle, Wash., for Snohmish County.

William H. DuRoss, III, Dept. of Labor, Washington, D.C., for respondent.

Before WRIGHT, SNEED, and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

The City of Edmonds (hereinafter the City) which is located in Snohomish County, Washington, seeks review of the decision of the Secretary of Labor (hereinafter the Secretary) affirming the final determination of the local grant officer that the City is required to repay funds expended under the Comprehensive Employment and Training Act of 1973 (hereinafter CETA) as amended by Public Law 95–524, 92 Stat. 1909 (1978).[1]

---

**I**

We are asked to decide if the Secretary, under 29 U.S.C. § 816(b), loses his jurisdiction to determine whether there is substantial evidence to support a complaint against a recipient of financial assistance, if he fails to make a final determination within 120 days. We do not address the additional contentions advanced by the City because we have concluded that the Secretary lacked jurisdiction over the complaint since the grant officer failed to make a final determination within 120 days.

**II**

The City contends that under section 106 of CETA (29 U.S.C. § 816(b)), a final determination must be issued not later than 120 days after receiving a complaint that a recipient of financial assistance has failed to comply with the requirements of the law.

Section 816(b) provides in pertinent part as follows:

> Whenever the Secretary receives a complaint from any interested person or organization ... that a recipient of financial assistance ... is failing to comply with the requirements of this chapter, the regulations under this Act, or the terms of the comprehensive employment and training plan, the Secretary shall investigate the matter. The Secretary shall conduct such investigation, and make the final determination ... not later than 120 days after receiving the complaint.

29 U.S.C. § 816(b).

The Secretary initiated these proceedings against the City because he believed the City had violated CETA residency requirements contained in his regulations.

Persons receiving financial assistance under a public service employment program must "reside within the area qualifying for assistance" 29 U.S.C. § 824. The Secretary has implemented the residency requirement of section 824 by promulgating 20 C.F.R. § 675.5–5(b) CETA regulations

---

1. CETA has been replaced by the Job Training Partnership Act, 29 U.S.C. § 1501, *et seq.* Pending cases continue to be adjudicated under CETA. 29 U.S.C. § 1591(e).

and 20 C.F.R. § 675.6(a). Pursuant to these regulations, the City was required to hire persons who were residents of Snohomish County. The City, as a recipient of CETA funds, hired the first applicants on July 2, 1979. The others were hired on February 4, 1980. A report was received by the Secretary's local grant officer on April 16, 1981, that these four employees had not been residents of Snohomish County at the time of their application. An informal hearing was conducted by the grant officer on January 19, 1982. On March 25, 1982, 343 days after the first report, the grant officer issued his final determination that the complaint was valid. The grant officer ordered the City to repay to the United States Department of Labor (hereinafter Department of Labor) the CETA funds expended for the salaries of the four participants. The City was granted a hearing before an Administrative Law Judge (hereinafter ALJ). The ALJ affirmed the grant officer's final determination. The decision of the ALJ was adopted by the Secretary.

### III

The Department of Labor, while conceding that the final determination was not made within the 120-day period prescribed by 29 U.S.C. § 816(b), argues that the limitation period set forth in the statute is not jurisdictional.

The jurisdictional question presented by the City has not been addressed by this court.[2] The Third Circuit, however, has ruled on this precise issue. In *Lehigh Valley Manpower Program v. Donovan*, 718 F.2d 99 (3d Cir.1983), the court held that the failure of the Secretary to make a final determination within 120 days after becoming aware of a potential violation of a regulation prohibiting nepotism in hiring was barred by section 816(b). *Id.* at 102. The court rejected the conclusion of the ALJ that the time limit set forth in section

816(b) was advisory. *Id.* In footnote three of its brief, the Department of Labor asks us not to follow *Lehigh* because that court "ignored the applicable legislative history."

We begin our analysis of section 816(b) by noting that in using the word "shall" Congress appears to require the Secretary to make a final determination concerning the merits of a complaint within 120 days. Nevertheless, the Department of Labor urges us *not* to give the word "shall" its plain meaning. In addressing a similar contention, we stated as follows: "Although a court is not absolutely forbidden from considering the legislative history when construing a statute which is plain on its face, *Heppner v. Alyeska Pipeline Service Co.*, 665 F.2d 868, 872 (9th Cir.1981) it is 'a step to be taken cautiously.'" *Tulalip Tribes of Washington v. FERC*, 732 F.2d 1451, 1454 (9th Cir.1984). Statutory language is generally construed according to the plain meaning of the words used by Congress "absent a clearly expressed legislative intention to the contrary." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

We agree with the Fifth Circuit's observation that "[u]se of the word 'shall' generally indicates a mandatory intent unless a convincing argument to the contrary is made." *Sierra Club v. Train*, 557 F.2d 485, 489 (5th Cir.1977). The legislative history supports a mandatory interpretation of the 120-day time limitation in section 816(b). The Senate Report noted that: "[i]n some cases grievances have been either ignored, or there have been interminable delays." S.Rep. No. 95–891, 95th Cong., 2nd Sess. 42, *reprinted in* 1978 U.S.Code Cong. & Admin.News 4480 at 4522. In summarizing the provisions of the proposed law, the Senate Report states: "[a]fter a complaint is filed the Secretary *must* make a determination on the complaint on the merits of the case within 120 days." *Id.* at 4523 (emphasis added).[3]

---

**2.** Statutory interpretations are questions of law which we review *de novo*. *Dumdeang v. CIR*, 739 F.2d 452, 453 (9th Cir.1984).

**3.** The House Report is silent as to the effect of the 120 days limitation. The House version of the statute did not contain this language. 124

Cong.Rec. 25230 (1978). The Joint Explanatory Statement of the Committee of Conference Report, however, comments on the time limitation as follows: "[u]pon exhaustion of local remedies, a complainant would be premitted [sic] appeal to the Secretary of Labor who *would*

The Department of Labor has ignored this portion of the statute's legislative history, relying instead on the comments of Congressman Obey during the debate on his amendment on the floor of the House of Representatives. During those proceedings, the following colloquy occurred:

Mr. Hawkins. Mr. Chairman, we have seen the amendment, we accept the amendment.

If the gentlemen would further yield, do I understand from the gentleman from Wisconsin [Mr. Obey] that if the determination is not made in a specified time it shall not affect the Secretary's jurisdiction in the matter?

Mr. Obey. That is correct.

Mr. Hawkins. With that understanding we do accept the amendment. 124 Cong.Rec. 25230–25231 (1978).

Congressman Obey's remarks were made on August 9, 1978. The Joint Explanatory Statement of the Senate and House Conference Report, issued on October 11, 1978 makes no reference to these House floor debate comments.

While it appears that when Congressman Obey says "shall" he sometimes means "may," the later Senate and House Conference Report construed the proposed final draft of the statute to require that the Secretary "must" make a final determination within 120 days. The Supreme Court has wisely cautioned that "[t]he remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history." *Chrysler Corp. v. Brown*, 441 U.S. 281, 311, 99 S.Ct. 1705, 1722, 60 L.Ed.2d 208 (1979). We are not persuaded by the Department of Labor's reliance on Congressman Obey's comments that we should abandon our judicial responsibility to give plain mandatory language its ordinary meaning. We see no principled reason to create an intercircuit conflict on the meagre showing made by the Department of Labor in support of its reading of section 816(b).

We conclude therefore, that section 816(b) is jurisdictional and that Congress intended to preclude any action on a complaint if the Secretary failed to make a final determination within 120 days.

Our conclusion that the word "shall," is mandatory is fully supported by the decision of the Supreme Court in *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). In *Mohasco*, the Court was called upon to decide whether the following language contained in section 706(e) of the Civil Rights Act of 1964 was mandatory: "A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful [conduct] occurred ..." 42 U.S.C. § 2000e–5(e).

In holding that this language was mandatory, the Supreme Court stated:

[I]n a statutory scheme in which Congress carefully prescribed a series of deadlines measured by numbers of days—rather than months or years—we may not simply interject an additional 60 day period into the procedural scheme. We must respect the compromise embodied in the words chosen by Congress.

*Id.* at 825–26, 100 S.Ct. at 2496–97.

In drafting section 816(b), Congress arrived at 120 days as the appropriate period during which the Secretary should make a final determination of the merits of an alleged violation of CETA. The Department of Labor would have us add 223 days to the time prescribed by the statute. We cannot do so without impermissibly usurping the separate legislative powers of the Congress.

In its briefs before this court, the Department of Labor points out that in our decision in *Marshall v. Local Union 1374*, 558 F.2d 1354 (9th Cir.1977), we took the position in interpreting the Labor-Management Reporting and Disclosure Act, that delay by the Secretary of Labor was not fatal to his jurisdiction. In *Marshall*, we adopted the rule set forth in *Fort Worth*

*make* a determination on the validity of the complaint within 120 days of its receipt." H.R. Conf.Rep. 1765, 95 Cong.2d Sess. 117, *reprinted* in 1978 U.S.Code Cong. & Admin.News 4581, 4588.

*National Corp. v. Federal Savings & Loan Insurance Corp.*, 469 F.2d 47 (5th Cir.1972) that: "[a] statutory time period is not mandatory unless it both expressly requires an agency or public official to act within a particular time period and specifies a consequence for failure to comply with the provision." *Fort Worth,* 469 F.2d at 58.

The later decision of the Supreme Court in *Mohasco,* discussed above, concluded that mandatory language prescribing a fixed time limit on administrative action was jurisdictional although there was no language in the statute setting forth the consequences which would flow from failure to meet the deadline.

To the extent that *Marshall* is in conflict with *Mohasco,* it has been overruled *sub silentio.* As we stated in *LeVick v. Skaggs Cos.,* 701 F.2d 777 (9th Cir.1983): "when existing Ninth Circuit precedent has been undermined by subsequent Supreme Court decisions, this court may reexamine that precedent without the convening of an *en banc* panel." *Id.* at 778.

We have reexamined *Marshall* in light of the Supreme Court's holding in *Mohasco.* We decline to follow the rule expressed in *Marshall* that the consequences of a failure to meet a mandatory time limit must be expressed before we can find that the requirement is jurisdictional.

Because we have concluded that the 120-day time limit for making a final determination set forth in section 816(b) is jurisdictional, the Secretary's order that the CETA funds must be repaid is REVERSED.