**MAYOR'S OFFICE OF EMPLOYMENT AND TRAINING, CITY OF CHICAGO and City of Chicago, Petitioners,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Respondent.**

Nos. 84–2433, 84–3156.

United States Court of Appeals, Seventh Circuit.

Argued June 11, 1985.

Decided Oct. 17, 1985.

impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. § 404.1520 (1984).

The ALJ, however, made further findings to the effect that: (1) "The claimant's impairments do not meet or equal the listings of Impairments;" and (2) "The evidence fails to establish a degree of pain which would preclude substantial gainful activity." Although the precise basis for the ALJ's determination under the SSA's regulations is therefore somewhat unclear, we need not attempt to resolve this ambiguity in the present case. Regardless of the step on which the ALJ reached his decision, his failure to discuss sufficiently the claimant's evidence of severe headaches requires a remand in this case.

Philip L. Bronstein, Acting Chief Asst. Corp. Counsel, Sharon Baldwin, Asst. Corp. Counsel, James D. Montgomery, Corp. Counsel, Chicago, Ill., for petitioners.

William Hall Walker, Office of Sol., U.S. Dept. of Labor, Washington, D.C., for respondent.

Before COFFEY and EASTERBROOK, Circuit Judges, and GRANT, Senior District Judge.[*]

COFFEY, Circuit Judge.

The City of Chicago petitions this court to review two decisions of the administrative law judge ("ALJ") concerning the failure of the Department of Labor ("DOL") to comply with the 120-day time limit set forth in 29 U.S.C. § 816(b). In both of his decisions, the ALJ determined that the failure of the DOL to render its "final determination" within the 120-day time limit did not constitute a jurisdictional bar. Thus, the DOL was not prevented from disallowing claims made by the City of Chicago for reimbursement of funds under Comprehensive Employment Training Act ("CETA"). We dismiss the City's petition for review.

I

Both cases arise from a financial and compliance audit of CETA grants awarded to the City of Chicago by the DOL. Under the grant procedure the DOL awards the City funds for various CETA projects and after a period of time it conducts an audit to ascertain if the City's expenditures of the funds were in compliance with CETA guidelines.

A. *Case No. 84–2433*

During the period from October 1, 1978 through September 30, 1979, the DOL, through its private auditors, conducted an audit covering approximately $152 million of grants received by the City of Chicago from the CETA program. The auditor's draft report recommended that approximately $5.3 million of the CETA funds spent by the City of Chicago be disallowed; and in addition, another $11.4 million in costs be questioned.[1] The DOL grant officer received the final audit report from the private accounting firm on April 30, 1982. Pursuant to section 106(b) of CETA, 29 U.S.C. § 816(b), the DOL had 120 days from that date to make its "final determination" of whether or not to disallow the City's expenditures. Title 29 U.S.C. § 816(b) provides:

"Whenever the Secretary receives a complaint from any interested person or organization ... which alleges, or whenever the Secretary has reason to believe ... that a recipient of financial assistance under this Act is failing to comply with the requirements of this Act, the regulations under this Act or the terms of the comprehensive employment and training plan, the Secretary shall investigate the matter. The Secretary shall conduct such investigation, *and make the final determination required by the following sentence regarding the truth of the allegation or belief involved, no later than 120 days after receiving the complaint.* If, after such investigation, the Secretary determines that there is

---

[*] The Honorable Robert A. Grant, Senior District Judge of the Northern District of Indiana, is sitting by designation.

1. Of the $11.4 million, approximately $11 million involved prior sub-grantee audits in which the City had failed to resolve previously questioned expenditures. Under the CETA provisions, the City was required to arrange for audits of its sub-grantees, organizations and agencies receiving CETA funds directly from the City, and promptly resolve any discrepancies discovered by these audits by either approving or disallowing the claims submitted to the DOL. *See* 41 C.F.R. § 29–70. By the time the auditing firm the DOL hired completed the audit of the City in 1981, the City failed to resolve approximately $11 million of the claims in the subgrantee's audits.

substantial evidence to support such allegation or belief that such a recipient is failing to comply with such requirements, the Secretary shall, after due notice and opportunity for a hearing to such recipient, determine whether such allegation or belief is true." (emphasis added).

Between April 30 and October 29, 1982, the date the grant officer issued his final determination, the DOL and the City engaged in informal negotiations to resolve the sub-grantee audit findings pursuant to 20 C.F.R. 676.88(d).[2] The grant officer issued his initial determination on August 26, 1982, within the 120-day period, the 120 days expiring on August 27, 1982, and provisionally disallowed $11 million of the questioned $11.4 million expenditures relating to the unresolved sub-grantee audits. On October 29, 1982, the grant officer issued his final determination and refused to approve approximately $13.3 million of the City's expenditures; this amount consisted of $3.3 million in expenditures the auditors originally recommended be rejected and $11 million relating to the sub-grantee audits. Over the next few years, the City and the DOL continued to engage in informal negotiations finally culminating in a stipulation reciting that the City owed the DOL approximately $3.6 million. On June 22, 1984, the administrative law judge approved the stipulation, but denied the City's motion to strike and dismiss the grant officer's final determination for failure to observe the 120-day statutory time limit set forth in 29 U.S.C. § 816(b).

### B. *Case No. 84–3156*

During the period from June 24, 1974 through September 3, 1974, the city also

was awarded approximately $20 million in CETA grants. After reviewing the City's records, the DOL auditors determined that $80,000 of the $20 million grant was spent improperly by the City. The final report of the auditor was filed in January, 1976, and the grant officer issued his initial determination on March 20, 1981, finding that the City owed the DOL $50,000 for misspent CETA funds.[3] Between March 30 and May 11, 1981, the DOL and the City were partially successful in their efforts to reach an informal resolution concerning the contested expenditures. Thus, on May 11, 1981, the grant officer issued his final determination directing the City to repay approximately $18,000 of the disallowed expenditures. The City once more filed a motion with the administrative law judge requesting that he strike the grant officer's final determination as the DOL did not have jurisdiction since the grant officer failed to issue his final determination within the 120-day limit after receipt of the final audit report; however, the administrative law judge denied the City's motion to strike the final determination.[4]

The issue presented to this court is whether the DOL's failure to issue its final determination within the 120-day period set forth in section 106(b) of CETA, 29 U.S.C. § 816(b), prevents the DOL from ordering the repayment of the disallowed expenditures.

### II

Essentially, the City's position is that the Secretary's failure to act within 120 days from receipt of the auditor's report bars the Secretary from taking any action to

---

2. 20 C.F.R. 676.88(d) provides for informal resolution of any complaint prior to the grant officer making his final determination: "The Grant Officer shall not revoke a recipient's grant, in whole or in part, not institute corrective actions or sanctions against a recipient without first providing the recipient with an opportunity to informally resolve those matters contained in the Grant Officer's initial determination."

3. As part of his explanation for the delay, the grant officer noted in his final determination

that much of the delay was attributable to the parties' poor understanding of the "proper resolution techniques." Further, as discussed later in this opinion, the DOL was facing a large backlog of cases during the mid and late 1970's which may have, in part, caused the delay.

4. At oral argument, the DOL conceded the second case (No. 84–3156) became subject to the 120-day limit in 1978 when section 816(b) was amended.

collect misspent CETA funds. As of this date, two federal circuit court of appeals have endorsed such a position having held that the Secretary's failure to act within 120 days bars him from taking any action against CETA recipients. *See Lehigh Valley Manpower Program v. Donovan,* 718 F.2d 99 (3d Cir.1983); *City of Edmonds v. United States Dep't of Labor,* 749 F.2d 1419 (9th Cir.1984). However, this circuit and the Second Circuit have rejected this position. *See Milwaukee County v. William E. Brock, Secretary of Labor,* 771 F.2d 983, 986–90 (7th Cir.1985); *St. Regis Mohawk Tribe, New York v. Brock,* 769 F.2d 37 (2d Cir.1985).

A review of the legislative history including the circumstances surrounding the enactment of the 120-day provision contained in section 816(b) demonstrates that Congress did not intend for the 120-day time period to act as a jurisdictional bar. In 1978, Congress amended the CETA statutes, along with adding the 120-day time period to section 816(b), as Congress was concerned with the reported fraud and waste and suspected abuses in the CETA program. *See, e.g.,* 18 U.S.C. § 665 (Supp. V 1982) (authority to take action against recipients, including criminal sanctions); 29 U.S.C. § 816(d) (clarifying Secretary's authority to order repayment for misspent funds); 29 U.S.C. § 836 (authority to terminate grants in emergency situation); 29 U.S.C. § 816(f) (authority to issue regulations against nepotism, kickbacks, and conflicts of interests). Congress granted the Secretary this increased enforcement power over the CETA program in order that he might have greater authority as well as responsibility to detect and remedy the problems and abuses inherent in the program. *See* S.Rep. No. 891, 95th Cong., 2d Sess. 42–43 (1978), *reprinted in* 1978 U.S. Code Cong. & Ad.News 4480, 4522–23; *see also* 124 Cong.Rec. 25182 (1978) (remarks of Rep. Lehman). At the time Congress was enacting these provisions giving the Secretary greater enforcement power and authority to deal with abuses in the CETA program, Congress was also well aware that the DOL faced a substantial backlog

of CETA cases caused by a shortage of DOL personnel. *See* H.R.Rep. No. 1124, 95th Cong., 2d Sess. 3, 5–6, 13; *see also* 124 Cong.Rec. 31,021 (1978) (remarks of Rep. Maguire); *id.* at 31,026 (remarks of Rep. Collins). Thus, since Congress was well-aware at this time of the already burdensome workload facing the Secretary that was caused by the shortage of personnel and was cognizant that it would be adding to this burdensome workload by increasing his responsibility as well as his investigative and enforcement power to detect and remedy abuses in the CETA program, it would be illogical for Congress to grant the Secretary greater increased responsibilities to detect abuses and at the same time impose a jurisdictional bar against the recovery of misappropriated funds by the Secretary only 120 days after reception of the complaint.

Further, the remarks of Congressman Obey, a sponsor of the 1978 amendment to section 816(b) providing for the 120-day time period, are helpful in our analysis of this question and support the DOL's position that failure by the Secretary to act within this period does not deprive the Secretary of jurisdiction to resolve any disputed matter. In proposing the amendment to section 816(b), Congressman Obey engaged in the following discussion on the House floor:

"Mr. Obey: Mr. Chairman, I understand this amendment will be accepted by the Committee. It is a very simple amendment. All it does is put a specific period of time in the bill during which the prime sponsor must answer a complaint lodged against it for violations of the conditions under which the CETA program exists in the first place, and also it establishes a 120-day time limit on the time during which the Labor Department can consider a complaint before it has to proceed.

. . . .

Mr. Hawkins: Mr. Chairman, we have seen the amendment, we accept the amendment.

If [Mr. Obey] would further yield, *do I understand from [him] that if the determination is not made in a specified time it shall not effect the Secretary's jurisdiction in the matter?*

Mr. Obey: *That is correct.*

Mr. Hawkins: *With that understanding we do accept the amendment."*

124 Cong.Rec. 25230–31 (1978) (emphasis added). We realize that "the remarks of a single legislator, even the sponsor, are not controlling in analyzing legislative history." *Chrysler Corp. v. Brown*, 441 U.S. 281, 311, 99 S.Ct. 1705, 1722, 60 L.Ed.2d 208 (1979). The careful review of the legislative history of an act of Congress must include both the entire record of the hearings and any other amendments contained in the legislative package to gain a proper understanding of Congress's intent. In this case when viewed in conjunction with the other 1978 amendments to the CETA program, Congressman Obey's remarks are consistent with Congress's increased concern over the detection of fraud, waste and abuse in the CETA program as the purpose of the 120-day provision was to act only as an incentive to accelerate the review of complaints received by the Secretary. "The 120 day deadline ... originated as part of a provision whose purpose was to benefit the victims of prime sponsor noncompliance with CETA ... It was not designed to give prime sponsors immunity for misuse of CETA funds unless there was a final determination within 120 days." *St. Regis Mohawk Tribe, New York*, 769 F.2d at 44, citing S.Rep. No. 891 95th Cong., 2d Sess. 15–16, 42–43 (1978) *reprinted in* 1978 U.S.Code Cong. & Ad.News at 4496, 4522–23. Given Congress's concern over the detection and reporting of CETA program abuses it is obvious that Congress did not intend the 120-day provision to act as a jurisdictional bar, and thus create a loophole allowing misappropriated CETA funds to continue to be held illegally by CETA recipients.

The purpose of the 1978 CETA amendments was to give the Secretary greater responsibility to insure increased accountability for the CETA funds; however, preventing the Secretary from pursuing his action against the CETA recipients where the Secretary fails to act within 120 days from the time of receiving the complaint (or final audit) would defeat the very purpose of these CETA amendments by stripping the Secretary of his power to act. Because of the complexity of the issues and the amount of material that must be reviewed and analyzed, more often than not more than 120 days is required for the Secretary to undertake a thorough and complete investigation of the facts, figures and data involved in a matter submitted for review. As an example, the first case in this appeal involved an audit of some 152 million dollars of CETA funds and concerned millions of dollars of contested costs.[5] Under these circumstances, it would be foolhardy to assume that a single grant officer could properly and thoroughly examine and digest the audit report of an accounting firm, which employed a number of people and spent considerable hours analyzing the City's complex records, and make his recommendation within 120 days, unless one assumes that the grant officer is to merely cast aside his responsibility and mandates of his oath of office and rubber stamp the audit report's recommendation. Certainly, to read section 816(b) as barring the Secretary from disallowing CETA fund claims when he fails to issue his "final determination" within 120 days from the time the complaint was received in his office would be inconsistent with the clear and explicit intent of Congress that the Secretary assure that the federal taxpayers' hard-earned tax dollars are proper-

---

**5.** At the same time it took over one year of negotiations between the DOL and the City to resolve the dispute over the amounts owed to the government. If it took over one year of negotiations to determine the proper amount of money due the government, it would be unrea-

sonable to expect a grant officer to come to a proper and accurate determination when using accepted accounting and business review procedures of the amount the City owed within only 120 days.

ly utilized by CETA recipients within the Congressional guidelines. To adopt any other position would impede the Secretary's efforts to recover those funds that were either misappropriated by CETA recipients or gained through schemes designed to defraud the government (and thus the taxpayers) and thus would frustrate Congress's intent to grant the Secretary increased responsibilities and enforcement power to detect and correct abuses in the CETA program.

To support its argument that the 120-day limit set forth in 29 U.S.C. § 816(b) acts as a jurisdictional bar to any action taken by the Secretary after this time, the City cites *Lehigh Valley Manpower Program v. Donovan,* 718 F.2d 99 (3d Cir.1983) and *City of Edmonds v. United States Department of Labor,* 749 F.2d 1419 (9th Cir. 1984) [6] which held that the failure of the Secretary to act within 120 days as provided in 816(b) deprived the Secretary of jurisdiction. The *Lehigh* decision does not persuade us that Congress meant to erect a jurisdictional bar to actions taken by the Secretary after the 120-day period as *Lehigh* failed to examine and legally analyze the legislative history or the general purpose behind the 1978 CETA amendments in reaching its conclusion that failure to act within the 120-day period deprived the Secretary of the power to challenge the alleged CETA violations. While *City of Edmonds* did examine the legislative remarks (particularly the remarks of Congressman Obey) concerning the passage of the 120-day time period, that decision failed to consider the result that if this section was read to impose a jurisdictional bar Congress's intent in amending the CETA statutes to provide the Secretary with greater power to detect and remedy CETA program abus-

es would be frustrated. Further, the Ninth Circuit improperly relied upon the Supreme Court's decision in *Mohasco Corp. v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980) to support its position that the use of the term "shall" in 29 U.S.C. § 816(b) required that the Secretary act within the 120-day time limit, or lose his jurisdiction. *Mohasco* is inapposite since it involved an individual who suffered the consequences of his *own* delay in filing his action; in our case, the interests of the taxpaying public are at stake and to impose a jurisdictional bar for actions taken after 120 days would be to sacrifice their interests. *See St. Regis Mohawk Tribe, New York,* 769 F.2d at 46.

The City finally argues that since the Supreme Court in *United States v. Locke,* — U.S. ——, ——, 105 S.Ct. 1785, 1796, 85 L.Ed.2d 64 (1985) expressed the view that "if the concept of a filing deadline is to have any content, the deadline must be enforced," [7] we must strictly construe section 816(b) in order for the deadline imposed by Congress to have any meaning. However, the *Locke* decision is not in point as the statute at issue in *Locke* expressly provided that failure to file a timely claim would "constitute an abandonment of the claim." While Section 816(b) requires the Secretary to act within 120 days, section 816(b)'s language and the 1978 CETA amendments' legislative history fail to specify any sanction if the Secretary fails to act within the proscribed time period. The well-recognized rule is that a statutory time period does not erect a jurisdictional bar to actions taken subsequent to that period unless the statute also specifies the sanction for failing to comply with the deadline. *See, e.g., St. Regis Tribe, New York,* 769 F.2d at 41; *Thomas v. Barry,*

---

6. Recently, the Ninth Circuit, in *Pierce County v. United States Department of Labor,* 759 F.2d 1398 (9th Cir.1985) (involving failure of Secretary to act within 120 days after receiving final audit report of CETA funds), followed its decision in *City of Edmonds.*

7. In *Locke,* the statute in question was section 314 of the Federal Land Policy and Management Act ("FLPMA") providing that mining claims located prior to FLPMA's enactment in 1976 must be recorded with the Bureau of Land Management within 3 years of Act's enactment and prior to December 31 of every year thereafter.

729 F.2d 1469, 1470 n. 5 (D.C.Cir.1984); *Usery v. Whitin Machine Works, Inc.*, 554 F.2d 498, 501 (1st Cir.1977). Indeed, the Secretary argues in his brief that section 816 does not create a jurisdictional bar, rather, as interpreted by the DOL, section 816(b) (and 20 C.F.R. § 676.88(e)) create "the right in a party to compel the Department to act promptly, not avoid action altogether," (DOL's brief at 21); and thus section 816(b) provides a party with the right to compel the Department to complete its investigation forthwith if at all possible within 120 days, or to proceed to an administrative hearing before an ALJ. As previously discussed, we are convinced that Congress never contemplated, when it imposed the 120-day period, barring the Secretary from recovering monies illegally gained through fraud, deception or misappropriation. Rather, in view of the fact that Congress was aware of the large backlog of cases and the Secretary's increased responsibility to detect fraud and waste with the already undermanned staff, it is clear that Congress intended the 120-day period merely to act as spur to accelerate the resolution of the myriad of complaints filed with the DOL, while mandating that the Secretary continue to apply proper business investigative and evaluation techniques, in an attempt to recover misappropriated funds. *See St. Regis Mohawk Tribe, New York*, 769 F.2d at 44, citing S.Rep. No. 891 95th Cong., 2d Sess. at 15–16, 42–43, 80, 1978 U.S.Code Cong. & Ad.News at 4495, 4522–23, 4560. Thus, if the DOL fails to act within the 120-day time limit the case should proceed to the ALJ who is to make his judgment without the benefit of the DOL.

In summation, we conclude that the imposition of a jurisdictional bar where the Secretary had failed to act within the 120 days set forth in 29 U.S.C. § 816(b) would be inconsistent with the legislative history and remedial purpose of the 1978 CETA amendments. Accordingly we dismiss the City's petition to review the orders of the administrative law judge.